**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DEIDRE L. MONROE**
Lake County Public Defender's Office
Gary, Indiana

ATTORNEYS FOR CO-APPELLEE DCS:

**EUGENE M. VELAZCO, JR.**
Department of Child Services,
Lake County Office
Gary, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

ATTORNEY FOR CO-APPELLEE CASA:

**DONALD W. WRUCK**
Dyer, Indiana

FILED

Apr 04 2012, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF Ja.B., J.B., J.P., A.P. & C.P., MINOR CHILDREN, AND THEIR MOTHER, R.P., | ) ) ) ) ) ) |
| R.P. | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 45A03-1110-JT-453 ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner, | ) ) |
| and | ) |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Mary Beth Bonaventura, Senior Judge
Cause Nos. 45D06-1011-JT-194, 45D06-1011-JT-195,
45D06-1011-JT-196, 45D06-1011-JT-198, 45D06-1011-JT-199

**April 4, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Respondent R.P. ("Mother") appeals the juvenile court's order terminating her parental rights to Ja.B., J.B., J.P., A.P., & C.P. (collectively "the children"). Mother alleges that the Indiana Department of Child Services ("DCS") did not provide sufficient evidence to support the termination of her parental rights. Concluding that the evidence was sufficient to support the termination of Mother's parental rights, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Mother has five[1] children at issue in this appeal.[2] Ja.B. was born on August 19, 1997; J.B. was born on May 30, 1995; J.P. was born on January 17, 1999; A.P. was born on December 1, 2001; and C.P. was born on November 17, 2004. In December of 2006, Mother and the children were about to be evicted from a homeless shelter when a representative of a

---

[1] Mother has a total of eight children. The termination of her parental rights to the oldest three children is not at issue in this appeal.

[2] The termination of the parental rights of the children's fathers is not at issue in this appeal.

non-profit community organization called Project Neighbors provided beds, mattresses, rugs, furniture, a washer and dryer, and kitchen accessories for the family in a home that was provided for Mother. For nearly three years, Project Neighbors provided the family with rent-free housing, clothing, mentoring, support, transportation, and food. In exchange, Mother was required to keep the home clean and to work to further her education. If Mother satisfied these two requirements, Project Neighbors intended to pass the title of the home over to Mother. Mother, however, was not able to do so.

Over time, the condition of the home began to deteriorate. Project Neighbors attempted to counteract the deteriorating condition of the home by putting a new roof on the home and arranging for volunteers to make continual improvements to the home. Project Neighbors was forced to provide new mattresses and furniture three or four times due to the deteriorating condition of the home. Food was not stored properly. Eventually, the home became infested with mice, and Project Neighbors was forced to replace the stove three times after it became infested with maggots. Over the course of the approximately three years, Project Neighbors spent nearly $40,000 in attempts to help the family.

The children lacked supervision. Mother's oldest child, E.W., attempted to feed and parent the younger children. Mother would not supervise the children but rather would spend her time sleeping, sitting, or wandering. Ja.B. was responsible for setting the alarm and getting her siblings up and ready for school every morning. Two of the older children repeatedly ran away, and Mother would engage in physical altercations with E.W. In addition, Mother would occasionally send the children to a relative's home, where some of

3

the children alleged they were sexually molested.

DCS first became involved with the children in November of 2008, after receiving reports that the family was struggling with instability and living in deplorable home conditions, and Mother was without the necessary means to parent and provide for the children. DCS case manager Valerie Washington conducted an assessment of the family's living conditions and found that the children were not adequately supervised, the family lack adequate bedding, and the food supply in the home was limited. Case Manager Washington also found that the children's attendance at school was "really off the chart" and that they suffered from poor grades. Tr. p. 62. Mother told Case Manager Washington that she suffered from a heart condition and depression, but that she was not taking her medication. Mother also told Case Manager Washington that E.W. was not taking her medication.

Based on her assessment, Case Manager Washington recommended that with intensive in-home services, the children could remain in the home, but also recommended that DCS should initiate proceedings to adjudicate the children as Children in Need of Services ("CHINS"). On December 18, 2008, Mother admitted that the children were CHINS. That same day, the juvenile court adjudicated the children as CHINS and continued the children's placement with Mother.

Even with the aid of DCS service providers, the conditions in the home did not improve. Mother continued to fail to provide adequate supervision for the children, and, although she complied with services, did not make progress toward improving the family's situation. Eventually, in May of 2009, the children were removed from Mother's care

4

because Mother had failed to show improvement in her parenting skills. Additional safety concerns had also arisen after standing water was found in the home and the conditions of the home had deteriorated to the point that Mother was going to be evicted from the home by representatives of Project Neighbors.

After removing the children from Mother's care, DCS provided Mother with intensive services. Mother generally complied with the services, but failed to improve to a level where she could adequately parent the children. Mother had transportation problems and would often be late or miss therapy sessions. Mother failed to implement the behaviors she was taught and would allow others to discipline the children during visitation sessions. Mother was unable to locate housing, employment, or a source of income, and she primarily relied on relatives for support. From time to time it would seem that Mother was beginning to make minimal progress, but such progress would be fleeting and Mother would revert back to her old way of doing things. In addition, Mother failed to progress to the point where her visits with the children could be unsupervised.

In light of Mother's failure to make lasting progress in implementing what she had learned through the services provided by DCS, in June of 2010, DCS case manager Amanda Horton recommended a change in the permanency plan to termination of parental rights and adoption because she believed that the children required a sense of safety and stability which Mother had, to that point, been unable to provide. In addition, DCS case manager Maritza Perez indicated that she felt that termination of Mother's parental rights was in the best interests of the children because they required a sense of stability and permanency that would

be best served through adoption.

On November 9, 2010, DCS filed a petition seeking the termination of Mother's parental rights to the children. As part of the continuing services provided by DCS, Mother was given a parenting assessment in June of 2011 by therapist Amy Stuhlmacher, MSW. Mother scored high to medium risk for abuse and neglect behaviors on all five areas that she was assessed. The results of this parenting assessment indicated that Mother is a great risk for being abusive or neglectful toward her children, and Stuhlmacher testified that she was concerned that Mother would again rely on the older children to take a parental role.

On June 27 and August 8, 2011, the juvenile court conducted an evidentiary termination hearing at which Mother appeared and was represented by counsel. During the termination hearing, DCS introduced evidence relating to Mother's failure to implement the parenting techniques learned from the lengthy intensive services provided by DCS and to progress to a level where she could adequately care for the children. DCS introduced evidence that Mother had not shown that she could adequately supervise or provide for the children, that she had not proven that she had acquired long-term stable housing and a permanent source of income, and that Mother was at great risk for being abusive or neglectful toward her children. DCS also provided evidence indicating that its plan for the permanent care and treatment of the children was adoption. Mother presented evidence which she claimed demonstrated that she was beginning to make progress and, as such, should be given more time before her parental rights were terminated. On August 23, 2011, the juvenile court terminated Mother's parental rights to the children. Mother now appeals.

**DISCUSSION AND DECISION**

The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise her children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id.* However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet her responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied.* Therefore, parental rights are not absolute and must be subordinated to the children's interests in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id.*

The purpose of terminating parental rights is not to punish the parent but to protect the children. *Id.* Termination of parental rights is proper where the children's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the children are irreversibly harmed such that their physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.*

Mother contends that the evidence presented at the evidentiary hearing was insufficient to support the juvenile court's order terminating her parental rights. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* Where, as here, the

7

juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id*. First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id*.

In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id*. A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id*. A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id*.

In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence that:

    (A) one (1) of the following exists:
        (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
        (ii) a court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
        (iii) the child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
    (B) that one (1) of the following is true:
        (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
        (ii) There is a reasonable probability that the continuation of the

> parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) termination is in the best interests of the child; and
>
> (D) there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2010). Specifically, Mother claims that DCS failed to establish that either (1) the conditions that resulted in the children's removal or the reasons for their placement outside of her care will not be remedied, or (2) there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the children. Mother also claims that DCS failed to establish that termination of her parental rights was in the children's best interests or that there is a satisfactory plan for the care and treatment of the children.

## A. Conditions Resulting in Removal Not Likely to be Remedied

In arguing that DCS failed to establish by clear and convincing evidence that the conditions resulting in the children's removal from her care will not be remedied and that the continuation of the parent-child relationship poses a threat to the children, Mother fails to acknowledge that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court need only find *either* that the conditions resulting in removal will not be remedied *or* that the continuation of the parent-child relationship poses a threat to the children. *In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. Therefore, "where, as here, the trial court specifically finds that there is a reasonable probability that the conditions which resulted in the removal of the [children] would not be remedied, and there is sufficient evidence in the record supporting the trial court's conclusion, it is not necessary

9

for [DCS] to prove or for the trial court to find that the continuation of the parent-child relationship poses a threat to the [children]." *In re S.P.H.*, 806 N.E.2d at 882. In order to determine that the conditions will not be remedied, the juvenile court should first determine what conditions led DCS to place the children outside of Mother's care, and, second, whether there is a reasonable probability that those conditions will be remedied. *Id*.

When assessing whether a reasonable probability exists that the conditions justifying a child's removal and continued placement outside his or her parent's care will not be remedied, the juvenile court must judge the parent's fitness to care for her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re A.N.J.*, 690 N.E.2d 716, 721 (Ind. Ct. App. 1997). The juvenile court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id*. A juvenile court may properly consider evidence of the parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate employment and housing. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). Moreover, a juvenile court "'can reasonably consider the services offered by [DCS] to the parent and the parent's response to those services.'" *Id*. (quoting *In re A.C.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997)).

Here, the juvenile court found that DCS presented sufficient evidence to prove that the conditions that resulted in the children's removal from Mother's care were not likely to be remedied, and upon review, we conclude that the juvenile court's finding to this effect is

10

supported by the record. The record reveals that Mother had a history of instability with respect to housing and income, which continued throughout the CHINS and termination proceedings. Mother was evicted from numerous shelters and homes, including the home provided for her at no cost by Project Neighbors and a family member's home.

The record further reveals that although Mother completed many of the services offered by DCS, she did not successfully implement the techniques that she learned from these services or successfully demonstrate that she could adequately supervise, care, and provide for the children. As the CHINS and termination proceedings progressed, Mother made minimal progress, but such progress was short-lived and Mother would revert to her prior deficient parenting techniques. In addition, Mother never progressed to unsupervised visitation with the children and would rely on others to discipline the children during their supervised visits. Multiple DCS case managers testified that despite the intensive services provided to Mother, Mother failed to show adequate progress to indicate that the deficient supervision, care, and housing conditions would be remedied in a timely fashion.

When considered as a whole, we conclude that the evidence is sufficient to demonstrate a reasonable probability that the conditions which resulted in the children's removal from Mother's care will not be remedied. It was within the province of the juvenile court, as the finder of fact, to minimize any contrary evidence of changed conditions in light of its determination that Mother's failure to provide a safe and stable living environment which led to the children's removal was unlikely to change. *See In re L.S.*, 717 N.E.2d 204, 210 (Ind. Ct. App. 1999), *trans. denied*.

11

Moreover, contrary to Mother's claim that the juvenile court "failed to recognize that [she] had physical and mental issues that affected her ability to quickly complete her case plan" and, as such, prematurely terminated her parental rights in light of evidence that she claims shows she had acquired suitable housing and sustainable income, Appellant's Br. p. 10, it is well-established that the juvenile court, acting as a trier of fact, was not required to believe or assess the same weight to the testimony as Mother. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004); *Marshall v. State*, 621 N.E.2d 308, 320 (Ind. 1993); *Nelson v. State*, 525 N.E.2d 296, 297 (Ind. 1988); *A.S.C. Corp. v. First Nat'l Bank of Elwood*, 241 Ind. 19, 25, 167 N.E.2d 460, 463 (1960); *Haynes v. Brown*, 120 Ind. App. 184, 189, 88 N.E.2d 795, 797 (1949), *trans. denied*. Mother's claim effectively amounts to an invitation for this court to reassess witness credibility and reweigh the evidence, which, again, we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

Under these circumstances, we cannot say that the juvenile court erred in determining that DCS established that it is unlikely that the conditions resulting in the children's removal would be remedied. *See In re C.M.*, 675 N.E.2d 1134, 1140 (Ind. Ct. App. 1997). Having concluded that the evidence was sufficient to support the juvenile court's determination, and finding no error by the juvenile court, we need not consider whether the continuation of the parent-child relationship poses a threat to the children's well-being because DCS has satisfied the requirements of Indiana Code section 31-35-2-4(b)(2)(B) by clear and convincing evidence.

**B. The Children's Best Interests**

12

Next, we address Mother's claim that DCS failed to prove by clear and convincing evidence that termination of her parental rights was in the children's best interests. We are mindful that in determining what is in the best interests of the children, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride*, 798 N.E.2d at 203. In doing so, the juvenile court must subordinate the interests of the parents to those of the children involved. *Id*. Furthermore, this court has previously determined that the testimony of the case worker regarding the children's need for permanency supports a finding that termination is in the children's best interests. *Id*.; see also *Matter of M.B.*, 666 N.E.2d 73, 79 (Ind. Ct. App. 1996), *trans. denied*.

Here, the testimony establishes that the children have a need for permanency and stability and that the termination of Mother's parental rights would serve their best interests. Case Manager Perez testified that she believes that the children's best interests would be served by the termination of Mother's parental rights because the children have a need for permanency and stability and Mother has failed to demonstrate that she is capable of providing the children with said permanency and stability. In discussing the children's need for permanency and stability, Case Manager Perez indicated that the children are tired of being in foster care and require a sense of permanency to live their desired "normal life" and that she does not believe that it is "fair to the kids that we wait around to see if mom could make those improvements and to see how long it is going to take mom to make those improvements." Tr. p. 225. Case Manager Perez further testified that the children's foster mother provides them with a sense of stability and emotional support that Mother is unable to

provide.

In addition, Case Manager Horton testified that she believed that Mother's parental rights should be terminated because the children required a sense of safety and security and should know that they will be well cared for, and that Mother had failed to prove that she could provide the children with the necessary level of stability and care. Just prior to the termination hearing, Mother was given a parenting assessment, the results of which indicated that Mother is a great risk of being abusive or neglectful toward her children in the future. The juvenile court also heard testimony that the children appeared to be happier, more well-adjusted, and have displayed marked academic and disciplinary improvement since being removed from Mother's home.

The juvenile court did not have to wait until the children were irreversibly harmed such that their physical, mental, and social development was permanently impaired before terminating Mother's parental rights. *See In re C.M.*, 675 N.E.2d at 1140. In light of the testimony of Case Managers Horton and Perez considered with the results of the parenting assessment which was given to Mother just prior to the termination hearing, we conclude that the evidence is sufficient to satisfy DCS's burden of proving that termination of Mother's parental rights is in the children's best interests.

Moreover, in arguing that the evidence was insufficient to support the juvenile court's determination that the termination of her parental rights is in the children's best interests, Mother alleges that the termination of her parental rights would cause the children to suffer pain. Specifically, Mother claims that the children would suffer pain because they have

14

indicated that they would like to be reunited with Mother, and also because they would no longer have contact with Mother or their older siblings. However, Mother's claim in this regard merely amounts to an invitation for this court to reweigh the evidence, which again, we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

### C. Satisfactory Plan for Care and Treatment of the Children

Mother also claims that DCS failed to establish that it had a satisfactory plan for the care and treatment of the children. In making this argument, Mother concedes that DCS's stated plan was for adoption, but argues that the plan was unsatisfactory because the children's foster mother had not "affirmatively stated that she would adopt these children." Appellant's Br. p. 11.

> In order for the trial court to terminate the parent-child relationship, the court must find that there is a satisfactory plan for the care and treatment of the child. *In re B.D.J.*, 728 N.E.2d 195, 204 (Ind. Ct. App. 2000). This plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. *Id.*

*In re S.L.H.S.*, 885 N.E.2d 603, 618 (Ind. Ct. App. 2008). "Attempting to find suitable parents to adopt the child[] is clearly a satisfactory plan." *Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 375 (Ind. Ct. App. 2007) (citing *In re A.N.J.*, 690 N.E.2d at 722). "The fact that there was not a specific family in place to adopt the child[] does not make the plan unsatisfactory." *Id.* (citing *In re B.D.J.*, 728 N.E.2d 195, 204 (Ind. Ct. App. 2000)).

Here, it is undisputed that DCS's plan for the children's care and treatment was for adoption. During the termination hearing, DCS presented evidence that the children's foster

15

mother was willing to adopt the children. Mother's claim to the contrary effectively amounts to an invitation for us to reweigh the evidence, which again, we will not do. *See In re S.P.H.*, 806 N.E.2d at 879. Thus, in light of the evidence presented during the termination hearing regarding DCS's plan for the care and treatment of the children, we conclude that DCS, by demonstrating that its plan for the care and treatment of the children was adoption, satisfied the statutory requirement set forth under Indiana Code section 31-35-2-4(b)(2)(C).

Having concluded that the evidence was sufficient to prove the statutory requirements set forth in Indiana Code section 31-35-2-4(b)(2) by clear and convincing evidence, we affirm the judgment of the juvenile court.

The judgment of the juvenile court is affirmed.

VAIDIK, J., and CRONE, J., concur.